## MASSETH v. LARKIN et al.

(Circuit Court of Appeals, Third Circuit. December 2, 1902.)

### No. 17.

1. PATENTS—INFRINGEMENT.

The fact that the device of a patent was the first to accomplish a certain result does not render another an infringement merely because it accomplishes the same result, but it must do so by substantially the same or similar means.

2. SAME—DEEP-WELL PACKERS.

The Masseth patent, No. 439,166, for a packer for deep wells, claims 1 and 2, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 111 Fed. 409.

C. P. Byrnes, for appellant.

James I. Kay and George H. Christy, for appellees.

Before ACHESON, Circuit Judge, and BRADFORD, District Judge.

ACHESON, Circuit Judge. This was a suit brought by Benjamin Masseth, the grantee of letters patent No. 439,166, dated October 28, 1890, for an improvement in packers for deep wells, against William H. Larkin and John Feigel, for alleged infringement of the patent.

The purpose of a well packer is to seal the annular space between the wall of the well and the casing. The improvement of the patent in suit related to what were known in the art as "wall-packers" (that is, packers supported at intermediate points between the top and bottom of the well), and to the class of such packers known as "pressure-packers," in which the expansion of the packing material is effected by the down pressure of the casing. We extract from the specification the following description of the device of the patent, and its mode of operation: The packer consists of an expansible packing-sleeve of rubber, which fits around the casing, and is interposed between a coupling sleeve, 4, and a tubular section, 5, which latter fits telescopic-

ally around the casing, and is loosely set thereon, so as to be capable of longitudinal movement when unrestrained. This tubular section, 5, is made externally conical or wedge-shaped. A collar or band, 6, encircles the casing below the section, 5, and is provided with upwardly projecting arms, 7, having fixed thereto leaf-springs, 8, which are bowed so that their middle portions shall be adapted to bear frictionally against the sides of the hole, so that they may be moved either up or down in the hole without biting positively thereon. . Section, 5, is provided with longitudinal recesses or grooves, 9, into which the ends of the arms, 7, are adapted to fit; the ends of these recesses, by engagement with the ends of the arms, 7, limiting the upward motion of the latter. When the casing is lowered into the hole the above-mentioned parts are attached to the lower end of the casing, the arms, 7, fitting in the grooves, 9, with the ends of the arms in engagement with the ends of the grooves, so as to lock the arms and to prevent them from rising on the conical section, 5. When it is desired to expand the packer, the casing is lifted somewhat, and the friction of the springs, 8, against the sides of the hole, causes the casing to rise within the collar, 6, and the ends of the arms, 7, to draw out from the grooves. The operator then turns the casing so as to bring the ends of the arms, 7, opposite the ungrooved portions of the section, 5, and the casing is allowed to descend in the well. The friction of the springs, 8, against the sides of the hole, upholds the arms, 7, and permits the casing to slip down within the arms, which rise over the conical portion of section, 5. The wedge action of the latter upon the arms spreads them, and causes them to bind in the hole, until finally their pressure against the sides of the hole becomes sufficiently strong to uphold the weight of the casing. Then the superimposed casing, acting upon the top of the rubber packing-tube, compresses the rubber longitudinally, and bulges it out against the side of the hole. The casing may be unpacked and moved in the well either up or down, and packed in another position. This is done by raising the casing sufficiently to relieve pressure on the packing-tube, when it will resume its normal cylindrical form, and by drawing up the casing still further, so as to remove the arms, 7, from the conical section, 5. Then by turning the casing the grooves, 9, will be brought into alignment with the upper ends of the arms, 7, and upon lowering the casing the arms will enter the grooves, and again become locked therein.

The claims of the patent alleged to be infringed by the defendants are the first and second, which are as follows:

"(1) In deep-well packers, the combination, with the pipes or casing and an expansible packer, of arms adapted to engage with the sides of the hole, and to hold the casing to afford resistance to the packer, and a lock for holding said arms, said lock being adapted to be disengaged by turning the casing, substantially as and for the purposes described.

"(2) In deep-well packers, the combination, with the pipes or casing and an expansible packer, of arms adapted to engage with the sides of the hole, and to hold the casing to afford resistance to the packer, a cone or wedge for expanding the arms, and a stop by which the arms are restrained from motion on the casing, and adapted to be freed from connection with the arms by turning the casing to permit the wedge to be moved within said arms to expand them, substantially as and for the purposes described."

The defendants' device is a wall-packer of the "pressure-packer" class. The characteristic parts of all such packers are a tubular section having on its surface a cone, a ring carrying slips or wedges adapted to ride on the cone and to be forced outwardly, an expansible rubber sleeve, and a telescopic section for expanding it. These parts were old in the art before the invention of the patent in suit. The defendants employ a ring carrying wedging-arms, which ring encircles the casing and freely moves up and down thereon. This ring normally rests on a sleeve which encircles the casing, but the ring is in no wise secured to the sleeve. The defendants' wedging-arms do not make contact with the sides of the well at any time while the packer is being lowered or shifted, but keep close to the casing. The sleeve has a left-hand female thread formed on its inner face, which engages with a male thread on the casing. This sleeve carries bowed strips of metal, having lugs adapted to engage with the walls of the well to hold the sleeve stationary as against rotary movement. The packing is accomplished thus: The operator, by turning the casing, pushes the sleeve upward, and thus forces the wedges at the upper ends of the arms up between the cone and the wall sufficiently to resist the weight of the casing.

The case turns upon the question of infringement. Now, upon the proofs and under the authorities, it can confidently be affirmed that, while Masseth's described improvement was meritorious and patentable, the invention was not a primary one. The patentee was not a pioneer here. The art was old when this improvement was conceived. Two classes of wall-packers had been in common use,—screw-packers and pressure-packers. The screw-packer, indeed, may not have been a perfect device, and its use may have been comparatively limited. Nevertheless it was a practicable instrumentality, whereby the expansion of the rubber packing was effected by means of screw-threaded sections at the lower end of the well tubing, operated from the top of the well by turning the tubing; and this packer, after being once set, could be moved either up or down the well, and reset. Again, the Gordon pressure-packer, after being set in the well, could be moved down and reset; and the Palm pressure-packer, after being set in the well, could be moved up and reset. All these packers preceded the invention of the patent in suit. Under the evidence it seems that Masseth was the first to devise a pressure-packer which, after being set in the well, could be released and moved either up or down, and repacked at any desired point. To accomplish this, he combined with old parts a lock—described in the specification—for locking and unlocking the upholding wedge-ended arms. What Masseth aimed at and achieved was to prevent the wedges at the ends of the arms from jamming between the cone and the wall of the well when such action is not desired; that is to say, during the lowering of the apparatus, or while it is being shifted up or down. To this end he provided restraining means to prevent the wedge-ended arms from acting when their action is not needed. He locked the arms out of action. The novelty of his apparatus is, "lock for holding said arms," as specified in his first claim, or "a stop by which the arms are restrained from motion on the casing," as specified in his second claim. The office of

Masseth's lock is aptly stated by Mr. Boyce, the plaintiff's expert, when he says:

"The function of a lock, as the word is intended in the Masseth packer, is to keep the wings [slips] from being engaged with and wedging the cone until such time as it is desired to have them engaged with the cone, and to unfasten them when it is desired to unfasten them."

Do the defendants use the Masseth lock, or the substantial equivalent thereof? That their apparatus has the capacity of readjusting the position of the packer in the well, and resetting it above or below its original position, is not decisive of the question of infringement. O'Reilly v. Morse, 15 How. 62, 119, 14 L. Ed. 601; Westinghouse v. Brake Co., 170 U. S. 537, 569, 18 Sup. Ct. 707, 42 L. Ed. 1136. The court in the former case said:

"And any one may lawfully accomplish the same end without infringing the patent if he uses means substantially different from those described."

And in the latter case the court said:

"But after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value."

Now, the defendants' ring which carries the slips or wedging-arms is normally detached and loose. The wedging-arms while out of action are free from restraint of any kind. No lock or stop is necessary to restrain the defendants' wedges or keep them out of action. The principle of the defendants' apparatus is such that normally the wedging-arms stay out of action. They are brought into action—forced up into engagement with the cone and wall of the well—by pressure exerted from below. Mr. Boyce, the plaintiff's expert, states:

"The defendants' slips are prevented from engaging with the cone in two ways: First, by their own gravity; and, second, because they have an inward spring which keeps them close to the main tube of the packer, so that they will not ride upon the cone, but must be forced up by action of the screw."

It is our judgment that neither in form nor in substance do the defendants employ the lock or stop of the patent in suit.

The argument based on the assumption that, in separating the ring which carries the slips or wedging-arms from the threaded sleeve, the defendants merely cut into two parts that which Masseth's patent shows is properly one single piece, fails, under the proofs. It plainly appears that, if the wedging-arms were attached to or connected with the threaded sleeve, the result would be an inoperative, or at least an impractical, device. The separation is not arbitrary, or even a matter of mere choice, but is absolutely necessary to the successful working of the defendants' packer. The principle of their packer requires the employment of free and independent slips or wedging-arms.

Both Masseth and the defendants have borrowed freely from the prior art, but we do not see that the defendants have borrowed anything from Masseth. The defendants' threaded sleeve, with its outwardly bowed retainers to prevent rotary movement, substantially agrees in structure and function with what we find in the Brooder

screw-packer, constructed in accordance with the Brooder patent of 1886.

Our study of this case has brought us to the conclusion that the structural differences between the packer described in the Masseth patent, and covered by the first and second claims, and the packer of the defendants, are substantial differences, and, furthermore, that in mode of operation the two packers are essentially unlike. We are of opinion that the circuit court was right in holding that there was no infringement by the defendants, and in dismissing the bill of complaint.

Accordingly the decree is affirmed.